UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| MARICEL FORTEZA, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| V. | § | No. 3:23-cv-875-B-BN |
| | § | |
| AFFORDABLE AUTO SHIELD, INC. | § | |
| d/b/a AAS, ET AL., | § | |
| | § | |
| Defendants. | § | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Maricel Forteza filed a *pro se* complaint alleging that Defendants Affordable Auto Shield, Inc. d/b/a AAS ("Affordable"), Sing for Service, LLC d/b/a Mepco ("Mepco"), and SunPath Ltd. ("SunPath") violated the Telephone Consumer Protection Act ("TCPA"), a related federal regulation, and provisions of Texas law. *See* Dkt. No. 3.

All three defendants have moved for dismissal under Federal Rule of Civil Procedure 12(b)(6). *See* Dkt. Nos. 14, 15, & 30. And one of the attorneys representing SunPath moves to withdraw. *See* Dkt. No. 35.

For the following reasons, the Court grants the motions to dismiss but will also grant Forteza leave to file a first amended complaint within 21 days of the entry of this order. And the Court grants the motion to withdraw filed by Attorney Jason S. Weiss and Weiss Law Group, P.A. but observes that SunPath remains represented by Attorney Walker Steven Young, *see* Dkt. No. 13, who has not moved for-and been granted-leave to withdraw, *see* N.D. TEX. L. CIV. R. 83.12(a) (as applicable here, "an attorney desiring to withdraw in any case must file a motion to withdraw").

**Legal Standards**

In deciding a motion to dismiss for failure to state a claim on which relief may be granted under Rule 12(b)(6), the Court "accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205-06 (5th Cir. 2007). Even so, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007), and must plead those facts with enough specificity "to raise a right to relief above the speculative level," *id.* at 555.

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* So, "[w]here a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (cleaned up; quoting *Twombly*, 550 U.S. at 557).

Accordingly, Federal Rule of Civil Procedure 8(a)(2) does not mandate detailed factual allegations, but it does require that a plaintiff allege more than labels and conclusions. And, while a court must accept a plaintiff's factual allegations as true, it is "not bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).

Consequently, a threadbare or formulaic recitation of the elements of a cause of action, supported by mere conclusory statements, will not suffice. *See id.*; *Armstrong v. Ashley*, 60 F.4th 262, 269 (5th Cir. 2023) ("[T]he court does not 'presume true a number of categories of statements,

including legal conclusions; mere labels; threadbare recitals of the elements of a cause of action; conclusory statements; and naked assertions devoid of further factual enhancement.'" (quoting *Harmon v. City of Arlington, Tex.*, 16 F.4th 1159, 1162-63 (5th Cir. 2021))).

In sum, "to survive a motion to dismiss" under *Twombly* and *Iqbal*, plaintiffs must "plead facts sufficient to show" that the claims asserted have "substantive plausibility" by stating "simply, concisely, and directly events" that they contend entitle them to relief. *Johnson v. City of Shelby, Miss.*, 574 U.S. 10, 12 (2014) (per curiam) (citing FED. R. CIV. P. 8(a)(2)-(3), (d)(1), (e)).

And, while "*[p]ro se* complaints receive a 'liberal construction,'" "mere conclusory allegations on a critical issue are insufficient." *Brown v. Tarrant Cnty., Tex.*, 985 F.3d 489, 494 (5th Cir. 2021) (cleaned up).

That said, Federal Rule of Civil Procedure 15 requires that leave to amend be granted freely "when justice so requires." FED. R. CIV. P. 15(a)(2). And, because this rule provides a "strong presumption in favor of granting leave to amend," *Fin. Acquisition Partners, LP v. Blackwell*, 440 F.3d 278, 291 (5th Cir. 2006), the Court must do so "unless there is a substantial reason to deny leave to amend," *Dussouy v. Gulf Coast Inv. Corp.*, 660 F.2d 594, 598 (5th Cir. Nov. 1981).

**Analysis**

Forteza alleges that she "received at least 31 calls between July 28, 2022 and December 14, 2022 to her personal cell phone number" that were made "without her prior express written consent and not related to an emergency purpose, selling extended car warrant services from the Defendants." Dkt. No. 3 at 8. Forteza then identifies 23 of these calls only by their date and time and the number initiating the call. *See id.* at 16. Of these 23 calls, Forteza also alleges that all "were initiated by an automatic telephone dialing as indicated by a 3-4 second delay of dead air when the

call first connected." *Id.* at 8.

But, except for one of these 23 calls, Forteza alleges no further details—for example, which defendant called her or what was said, such that the Court could infer which defendant made—or, possibly, authorized an agent to make—the call.

As to that one outlier, Foretza alleges that

> [o]n November 1, 2022, Plaintiff received a call from [Affordable] selling extended car warranty. To confirm solicitation, [Affordable] sent the Plaintiff the contract, Platinum Deluxe Service Contract. The contract was from [Affordable], who is the Seller/Dealer/Vendor and the sales person is Fabrice Bataille. The contract also shows [SunPath] as the Provider/Administrator/Obligor of the Contract. [Mepco] is the Finance Company or the Payment Plan Provider.

*Id.* at 8-9; *see also id.* at 18-29 (the alleged service contract attached as an exhibit to the complaint).

To address the pending motions to dismiss, the Court will focus on the plausibility of Forteza's federal law claims, because 28 U.S.C. § 1331 is the sole alleged basis for the Court's subject matter jurisdiction and, if the federal law claims are dismissed at this initial stage, there will no longer be an "independent basis of subject matter jurisdiction" to allow for supplemental jurisdiction under 28 U.S.C. § 1367 for the remaining state law counts. *Atkins v. Propst*, No. 22-10609, 2023 WL 2658852, at *2 (5th Cir. Mar. 28, 2023) (per curiam) (citing *Arena v. Graybar Elec. Co., Inc.*, 669 F.3d 214 (5th Cir. 2012)). So, if the Court determines that the federal law claims should be dismissed, it need not address the state law claims to grant the motions to dismiss.

Based on facts set out above, Forteza first alleges under federal law that all defendants violated 47 U.S.C. § 227(b)(1)(A)(iii).

> Section 227(b) of the TCPA makes it unlawful for any person to "make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice to any telephone number assigned to a cellular

-4-

> telephone service." 47 U.S.C. § 227(b)(1)(A)(iii). A violation of § 227(b)(1)(A)(iii) occurs if: "(1) the defendant called a cellular telephone number; (2) using an automatic telephone dialing system or an artificial or prerecorded voice; (3) without the recipient's prior express consent." *Cunningham v. Nationwide Sec. Sols., Inc.*, No. 3:17-cv-337-M, 2017 WL 10486988, at *2 (N.D. Tex. Nov. 2, 2017) (quoting *Meyer v. Portfolio Recovery Assocs., LLC*, 707 F.3d 1036, 1043 (9th Cir. 2012)).

*Hunsinger v. Alpha Cash Buyers, LLC*, No. 3:21-cv-1598-D, 2021 WL 5040228, at *3 (N.D. Tex. Oct. 29, 2021) (cleaned up); *see also Forteza v. Pelican Inv. Holdings Grp.*, No. 4:23-cv-401-ALM-KPJ, 2023 WL 9199001, at *3 n.2 (E.D. Tex. Dec. 27, 2023) (§ 227(b) violations "do not require [National Do Not Call] Registry [("DNC")] membership"), *rec. adopted*, 2024 WL 128206 (E.D. Tex. Jan. 11, 2024).

> As to the required use of an automatic telephone dialing system ("ATDS"),
>
> [t]he TCPA defines an ATDS as "equipment which has the capacity - (A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." 47 U.S.C. § 227(a)(1). [And] the Supreme Court resolved a circuit split "regarding whether an autodialer must have the capacity to generate random or sequential phone numbers," or whether an ATDS "need only have the capacity to store numbers to be called and to dial such numbers automatically." *Facebook, Inc. v. Duguid*, 592 U.S. 395, 401 (2021) (internal quotations omitted). The Court held that, "[t]o qualify as an 'automatic telephone dialing system,' a device must have the capacity either to store a telephone number using a random or sequential generator or to produce a telephone number using a random or sequential number generator." *Id.* at 399. Thus to establish a claim under § 227(b), "the equipment in question must use a random or sequential number generator," not merely auto-dial stored numbers. *Id.* at 404.

*Hunsinger*, 2021 WL 5040228, at *3 (citations modified).

Courts "have noted the difficulty a plaintiff faces in knowing the type of calling system used without the benefit of discovery and found that [they] can rely on details about the call to infer the use of an ATDS." *Horton v. Nat'l Republican Senatorial Comm.*, No. 3:22-cv-1000-G-BK, 2023 WL 372066, at *4 (N.D. Tex. Jan. 23, 2023) (quoting *Cunningham v. Nationwide Sec. Sols., Inc.*, No.

3:17-cv-337-M, 2017 WL 10486988, at *3 (N.D. Tex. Nov. 2, 2017)). "To that end, courts in this circuit have held that a plaintiff can survive a motion to dismiss by pleading different facts in his complaint that implicitly illustrate the necessary TCPA elements." *Id.* (collecting cases). "Even so, the plaintiff must still plead sufficient facts illustrating the TCPA elements." *Id.* (citation omitted).

So far, Forteza has not done so. Like the allegations found deficient in *Cunningham v. TechStorm, LLC*, No. 3:16-cv-2879-M, 2017 WL 721079 (N.D. Tex. Feb. 23, 2017), Forteza's complaint, for the most part, "contains only vague generalizations." *Id.* at *2. For example, where Forteza has sued three different defendants based on some 23 identified calls, pleading—as to 22 of those calls—only the time, date, and phone number associated with the call is inadequate to connect a particular defendant to the misconduct alleged.

Moreover, after *Duguid*, alleging dead air when a phone call connects—without further facts that could show the use of ATDS—may not be enough to plausibly plead that "'the equipment in question [used] a random or sequential number generator,' not merely auto-dial stored numbers." *Hunsinger*, 2021 WL 5040228, at *3 (quoting *Duguid*, 592 U.S. at 404); *see, e.g.*, *Perez v. Quicken Loans, Inc.*, No. 19-cv-2072, 2020 WL 1491145, at *2 (N.D. Ill. Mar. 27, 2020) ("The Court agrees with Defendant that Plaintiff's allegations are too thin to support an inference that Defendant used an ATDS to make the calls about which Plaintiff complains" where, "focusing on the second element in particular, Defendant insists that the allegation of a 'pause' does not support the inference that an ATDS was used to make the calls in question, for 'at least some predictive [dialers] … have no capacity to generate random or sequential numbers.' Defendant further points out that the nature and frequency of the calls does not support an inference of ATDS use, since calls can be made frequently with rotary or push-button phones, too. Thus, the ability to call many numbers quickly

does not hinge on the equipment's capacity for 'generating [random or sequential] numbers and then dialing them.' Finally, Defendant insists that multiple calls in one day may indicate an effort to target Plaintiff, rather than to randomly or sequentially contact her." (quoting *ACA Int'l v. FCC*, 885 F.3d 687, 703, 702-03 (D.C. Cir. 2018)); *see also id.* at *3 ("Plaintiff should take care to include in her second amended complaint more robust allegations about the extent and timing of her interactions with Defendant's representatives, as those details may inform whether she has sufficiently alleged the use of an ATDS. While it is true, as many courts have observed, that a plaintiff should not be required to plead specific facts as to the technical specifications of the type of call system employed by the defendant, it also cannot be the case that every barebones TCPA claim can survive a motion to dismiss by alleging unwanted calls and a short period of dead air when the call is answered. And it is not too much to ask that a plaintiff who was so frustrated over persistent calls from the same number to have contacted a lawyer actually recall and set down in a pleading the details of the interactions that led her to bring a federal case.").

> Turning to Forteza's second alleged violation of federal law,
>
> Section 227(c)(1) authorizes the Federal Communications Commission ("FCC") to promulgate regulations on telephone solicitations. *See* 47 U.S.C. § 227(c)(1) ("[T]he Commission shall initiate a rulemaking proceeding concerning the need to protect residential telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object."). Based on this authorization, "the FCC issued regulations prohibiting 'person[s] or entit[ies] [from] initiat[ing] any call for telemarketing purposes to a residential telephone subscriber unless [the] person or entity has instituted [certain listed] procedures for maintaining' a do-not-call list." *Charvat v. NMP, LLC*, 656 F.3d 440, 443-44 (6th Cir. 2011) (alterations in original) (quoting 47 C.F.R. § 64.1200(d)). If a person or entity violates these delivery restrictions, § 227(c)(5) grants a right of private action to "[a] person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection."

*Hunsinger v. Alpha Cash Buyers, LLC*, No. 3:21-cv-1598-D, 2022 WL 562761, at *2 (N.D. Tex. Feb.

24, 2022); *see also Powers v. One Techs., LLC*, No. 3:21-cv-2091, 2022 WL 2992881, at *2 (N.D. Tex. July 28, 2022) (finding "that § 64.1200(d) was issued to further the privacy right in § 227(c)," so "the private right of action contained in § 227(c) reaches violations of § 64.1200(d)" (footnote omitted)).

"The regulation relates to a marketer's duty to prepare internal policies to receive and implement affirmative requests not to receive calls," so, where a plaintiff fails to "allege that he made any such affirmative request," he generally fails to allege "how the provision was violated." *Bailey v. Domino's Pizza, LLC*, 867 F. Supp. 2d 835, 842 (E.D. La. 2012) (granting motion to dismiss where a complaint "simply recite[d] the requirements of 47 C.F.R. § 64.1200(d) and conclusorily allege[d] that they were violated"); *cf. John v. Keller Williams Realty, Inc.*, No. 6:19-cv-1347-Orl-40DCI, 2020 WL 10502631, at *5 (M.D. Fla. Feb. 4, 2020) ("The regulations in § 61.1200(d) are not directly concerned with the *national* do-not-call list, but the requirement that companies maintain *internal* do-not-call lists." (emphasis in original)).

Forteza alleges that all defendant violated § 64.1200(d) where her cellular phone serves as a residential telephone, *see* Dkt. No. 3 at 9; she registered for the DNC on October 3, 2022, *see* Dkt. No. 3 at 6; and she received calls after this date, *see id.* at 8-9 & 16.

But, particularly where she does not also allege that she requested that she be added to a defendant's internal do-not-call list, Forteza offers no other allegations from which the Court may at least infer that a defendant failed to institute required procedures for maintaining a do-not-call list. That is, even accepting that Section 64.1200(d) applies to cellular phones for the limited purpose of ruling on the motions to dismiss, *see, e.g.*, *Hunsinger*, 2022 WL 562761, at *2 & n.3 (recognizing "a split among district courts over whether cellular telephone owners, as a matter of law, can be

residential telephone subscribers" and noting that, "[a]lthough the court now holds that [the plaintiff] can qualify as a residential telephone subscriber within the meaning of 47 C.F.R. §§ 64.1200(c) and (d) because he pleads that he received telephone calls and text messages on a cellular telephone that was used for residential purposes, the court may reconsider this conclusion at a later stage in this court if developments in the law so warrant"), Forteza still fails to plead sufficient facts to allege that a particular defendant violated Section 64.1200(d).

First, as noted above—and, again, considering that Forteza has sued three separate defendants—the allegations in the complaint are only more than conclusory as to one call: the one on November 1, 2022. And to allege a plausible violation of Section 64.1200(d) requires more than one call. *See, e.g.*, *Slominski v. Globe Life, Inc.*, No. 7:23-CV-1081-D, 2024 WL 556978, at *8 (E.D.N.C. Feb. 12, 2024) ("Slominski plausibly alleges just one call from United after she asked to be placed on an internal do-not-call list. Accordingly, the court grants defendants' motion to dismiss [this] claim." (citations omitted)).

Further, the complaint lacks allegations to reflect that Forteza requested to be placed on a do-not-call list maintained internally by a defendant or allegations that could otherwise show that a defendant failed to institute required procedures for maintaining a do-not-call list. *See, e.g.*, *id.* ("Slominski must plausibly allege United called her at least twice in a year and these calls indicate United 'did not implement the procedures outlined in 47 C.F.R. § 64.1200(d), including maintaining an internal do-not-call list.' When a callee asks to be put on an internal do-not-call list, a caller 'must honor a residential subscriber's do-not-call request within a reasonable time from the date such request is made,' not to exceed '30 days from the date of such request.'" (quoting *Fischman v. MediaStratX, LLC*, No. 2:20-CV-83, 2021 WL 3559639, at *6 (E.D.N.C. Aug. 10, 2021), then 47

C.F.R. § 64.1200(d)(3))).

In sum, the Court grants the pending motions to dismiss for the reasons set out above and, because where the claims providing for the Court's jurisdiction at this initial stage are due to be dismissed, the Court elects to relinquish jurisdiction over the remaining state law claims.

That said, Forteza does request leave to amend in her briefing. And the Court is inclined to grant her at least another shot to plead her best case. So, while the motions to dismiss are granted, the Court will also allow Forteza an opportunity to file a first amended complaint within a reasonable time, as set out below.

## Conclusion

The Court **GRANTS** the motions to dismiss filed by Defendants Affordable Auto Shield, Inc. d/b/a AAS, Sing for Service, LLC d/b/a Mepco, and SunPath Ltd. *See* Dkt. Nos. 14, 15, & 30. The Court also **GRANTS** the motion to withdraw filed by Attorney Jason S. Weiss and Weiss Law Group, P.A. [Dkt. No. 35] but observes that Defendant SunPath Ltd. remains represented by Attorney Walker Steven Young, who has not moved for—and been granted—leave to withdraw. The Court further **ORDERS** Plaintiff Maricel Forteza to file a first amended complaint no later than **21 days** after entry of this order or risk entry of final judgment without further notice. And the Court notes that this lawsuit remains referred to United States Magistrate Judge David L. Horan for further pretrial management under 28 U.S.C. § 636(b).

SO ORDERED.

DATE: February 29, 2024.

JANE J. BOYLE
UNITED STATES DISTRICT JUDGE